IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NEXT TECHNOLOGIES, INC., § | |
| Plaintiff, § | |
| V. § | |
| § | |
| THERMOGENISIS, LLC, DBA § | A-15-CV-00225-LY-ML |
| WORKWHILEWALKING AND IMOVR, § | |
| LARRY SWANSON, AND RON § | |
| WIENER, § | |
| Defendants, § | |

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**

Before the Court is the above-referenced case, in which Defendants Larry Swanson and Ron Wiener's Motion to Dismiss filed June 2, 2015 [Dkt. #6], Plaintiff's Memorandum in Opposition to Defendants Ron Wiener's and Larry Swanson's Motion to Dismiss filed September 21, 2015 [Dkt. #31], and Defendant Ron Wiener and Defendant Larry Swanson's Reply in Support of Their Motion to Dismiss filed September 28, 2015 [Dkt. #35] have been referred to United States Magistrate Judge Mark Lane for report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72; Loc. R. W.D. Tex. App'x. C, Rule 1(d). Having considered the Motion to Dismiss [Dkt. #6], the related briefing and jurisdictional evidence, the relevant case law, and the case file as a whole, the Magistrate Court issues the following Report and Recommendation.

**I.     BACKGROUND**

The underlying factual allegations in this dispute are set out in detail in the Magistrate Court's Order granting limited jurisdictional discovery. [Dkt. #21]. In brief, Plaintiff Next Technologies, Inc. manufactures "walking desks" or "treadmill desks" in Texas. Compl. [Dkt. #1] at ¶9. Plaintiff alleges Defendant ThermoGenisis, Inc. ("ThermoGenisis") markets a

1

competing desk product and, in a false advertising scheme, purports to host an "independent review site" called WorkWhileWalking.com. *Id.* at ¶¶ 13-19. Plaintiff alleges the Individual Defendants, Ron Wiener and Larry Swanson, are responsible for the content of this website. *Id.* at ¶¶ 16-17. The website reviews the pros and cons of various walking desks, including desks produced by ThermoGenisis and desks produced by its competitors. *Id.* at ¶ 19. Plaintiff alleges the WorkWhileWalking.com reviews are not independent, but are advertisements for Defendant ThermoGenisis' products. *Id.* Plaintiff further alleges reviews posted on the WorkWhileWalking.com site contain false, misleading, and defamatory statements about Plaintiff's products. *Id.* at ¶ 26.

Plaintiff has sued ThermoGenisis (d/b/a WorkWhileWalking.com and iMovr), Wiener, and Swanson. Plaintiff sues Thermogenisis under the Lanham Act, 15 U.S.C. § 1125, alleging the entire "independent" WorkWhileWalking.com website is a false advertising scheme for ThermoGenisis products. *Id.*, Counts One and Two. Plaintiff has sued all Defendants, including Wiener and Swanson, for copyright violation pursuant to 17 U.S.C. § 106, alleging the images of Next Technologies' products displayed on the WorkWhileWalking.com website were posted without authorization. *Id.*, Count Three. Plaintiff further alleges against all Defendants, including Wiener and Swanson, state law claims of tortious interference with contractual relations and prospective business relationships, defamation per se, and defamation. *Id.*, Counts Four to Seven. Larry Swanson and Ron Wiener (the "Individual Defendants") have responded to the Complaint with a Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. #6], asserting their Internet activities do not support personal jurisdiction in Texas. *Id.* at 5-9. As this Court previously observed, however, Defendants' arguments on this point are somewhat blunted by the fact that their codefendant, Thermogenisis, has conceded the very same Internet activities

support personal jurisdiction in Texas.  In the alternative, the individual Defendants argue that the fiduciary shield doctrine applies to nullify any contacts with Texas arising out of their work on behalf of Thermogenisis.

## II.     STANDARD OF REVIEW

The determination whether a federal district court has personal jurisdiction over a nonresident defendant has two steps. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. *Id.*  If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*  Because the Texas long-arm statute extends to the limits of due process, *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W. 3d 653, 657 (Tex. 2010), the court need only consider whether exercising jurisdiction would be consistent with the Due Process Clause of the Fourteenth Amendment. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  "The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A.     Specific Jurisdiction

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "Specific jurisdiction exists when the nonresident

3

defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are continuous and systematic.'" *Id.* (citations omitted).  In the instant case, only specific jurisdiction is alleged.

Specific jurisdiction must be analyzed on a claim-by-claim basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W. 3d653, 600 (Tex. 2010); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).  The Court need not assess contacts on a claim-by-claim basis, however, "if all claims arise from the same forum contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150-51 (Tex. 2013).  In this case, the Court will analyze personal jurisdiction as to Weiner and as to Swanson separately, but need not break the analysis of personal jurisdiction down on a claim-by-claim basis as to each defendant. *Id.*

The Fifth Circuit applies a three-part framework to analyze the exercise of specific personal jurisdiction:  (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;  (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and   (3) whether the exercise of personal jurisdiction is fair and reasonable. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).  To determine if sufficient contacts exist, the court considers the quality and nature of any contacts with the state and examines "'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)); *Int'l Shoe*, 326 U.S. at 318-19.  To satisfy due

process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121.

"If [Plaintiff] can successfully establish the first two prongs [minimum contacts and a connection between the defendant's forum-related contacts and the plaintiff's cause of action], then the burden shifts to [Defendants] to show that exercising jurisdiction would be unfair or unreasonable." *Monkton*, 768 F.3d at 433. To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiffs interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

### B. The Fiduciary Shield Doctrine

Wiener and Swanson invoke the fiduciary shield doctrine to defeat Plaintiff's specific personal jurisdiction allegations. Mot. Dism. [Dkt. #6] at 4-5; Reply [Dkt. #35] at 1-5. "Under the fiduciary shield doctrine, 'an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation [.]'" *Optimum Return LLC v. CyberKatz Consulting, Inc.*, No. 3:03-CV-1064-D, 2004 U.S. Dist. LEXIS 25092, *6 (N.D. Tex. Mar. 26, 2004) (quoting *Stuart v. Spademan*, 772 F.2d 1185,1197 (5th Cir. 1985)).

The fiduciary shield doctrine does not shield an individual from personal jurisdiction arising out of his own allegedly tortious actions, even if taken while working for a corporate entity. *Spademan*, 772 F.2d at 1197-98. Plaintiff asserts this "tortious conduct" exception applies here. Resp. [Dkt. #31] at 10-11. Defendants counter that their actions were not tortious

and were taken in the context of carrying out their duties as officers of Thermogenisis.  Reply [Dkt. #35] at 1-5.

To the extent there is a factual dispute regarding the existence of contacts sufficient to support personal jurisdiction, it is the Court's responsibility to determine whether the disputed contact occurred—"regardless of whether that contact is also an element of liability." *Leesboro Corp. v. Hendrickson*, 322 S.W.3d 922, 933 (Tex. App.—Austin 2010, no pet.) (citing *Kelly*, 301 S.W.3d at 659).  Specifically, with regard to the fiduciary shield doctrine, a court may be called on to resolve factual disputes that are relevant to liability in order to determine whether any contacts with the forum state are attributable to the corporation or the corporate officer individually.  *Leesboro*, 322 S.W.3d at 933 ("In other words, as long as [Defendant] was conducting [the corporation's] business, he was surrounded by a protective 'cocoon' that insulated him from making jurisdictional contact with Texas. But he could step out of that cocoon, and thus make jurisdictional contact with Texas, by, for example, committing a tort.")

### III.   ANALYSIS

#### A.   Plaintiff Has Sufficiently Alleged the Website Contents Were Directed at Texas

Plaintiff contends Wiener and Swanson are subject to this court's specific personal jurisdiction because of their alleged intentional torts (defamation, copyright infringement, and tortious interference with business relations), aimed at diverting market share from a Texas-based small business.  Resp. Mot. Dism. [Dkt. #31] at 7-10.  Wiener and Swanson argue there is no specific personal jurisdiction in this case because the alleged conduct underlying all of Plaintiff's tort theories consists of (1) writing and posting internet product reviews and (2) engaging in email, letter, and phone communications with Plaintiff concerning a proposed business arrangement and a cease-and-desist letter.  Mot. Dism. [Dkt. #6] at 2; Reply [Dkt. #35]

at 5-8. Defendants assert these actions were not directed at a Texas audience or intended to cause particular harm or impact in Texas. Reply at 7-8. Because "the focal point of [Defendants'] publication was not Texas," Wiener and Swanson contend no personal jurisdiction should attach based on their statements made outside Texas. *Id*. at 8 (citing *Clemens v. McNamee*, 608 F. Supp. 2d 811, 820 (S.D. Tex. 2009) (aff'd by *Clemens*, 615 F.3d 374).

As noted above, Defendants' company, Thermogenisis, has conceded from the start that these same internet postings were sufficient to support jurisdiction in Texas. The Magistrate Court determines Thermogenisis, and not the individual Defendants, is correct on this point. In the context of allegedly defamatory postings on an "intermediate" interactive website, the Fifth Circuit has held that personal jurisdiction requires a showing that "'(1) the subject matter of and (2) the sources relied upon for the article were in the forum state.'" *Clemens*, 615 F.3d at 380 (quoting *Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419 (5th Cir. 2005)). Additionally, the Texas Supreme Court has found that specific jurisdiction may lie where a defendant's out-of-state (or online) activities are purposefully "aimed at getting extensive business in or from the forum state." *See Moncrief Oil*, 414 S.W.3d at 153. Defendants' allegedly tortious internet postings concerned a Texas business and were aimed at securing not only a Texas distributorship or other business agreement, but at diverting market share from this Texas company. This conduct is sufficiently directed into the forum state to support personal jurisdiction. *Id.*

Specifically, Plaintiff's Texas business and its products are the subjects of the allegedly defamatory reviews and at least one allegedly defamatory interactive internet "chat" session that specifically encouraged the user to consider Thermogenisis products over Plaintiff's product. Compl. [Dkt. #1] at. ¶¶ 26, 19. Plaintiff specifically alleges "the defamatory, false, and misleading reviews began only after Next Technologies declined ThermoGenisis' request to

7

become an affiliate of or dealer for NextDesk." Compl. [Dkt. #1] at ¶ 80. Further, in response to the Motion to Dismiss, Plaintiff provides internal emails from Ron Wiener, copying Larry Swanson and others, specifically attributing an increase in orders of Thermogenisis products to the rise in the "ratings" of a negative WorkWhileWalking.com review of a competitor's product. Mot. Seal [Dkt. #32] at D, TG 128-132. This same email chain demonstrates that Wiener held Swanson out as the editor in chief, responsible for the content of the WorkWhileWalking.com reviews, not only to Plaintiff but to other competitors who complained about negative reviews. *Id.* The email chain further demonstrates that Swanson and Wiener collaborated in making decisions about what content to post/change in response to complaints from competitors. *Id.* Plaintiff's factual allegations and supporting jurisdictional discovery therefore establish both Ron Wiener and Larry Swanson caused the WorkWhileWalking.com website to post allegedly defamatory reviews and customer communications concerning Plaintiff, a Texas competitor, in order to pressure the competitor into reconsidering a proposed business combination and/or in order to gain market share from the Texas-based business. *See id.* These allegations identify conduct sufficiently directed into the forum state to support the exercise of personal jurisdiction. *See Montcrief Oil*, 414 S.W.3d at 153-54; *Hawbecker*, 2015 U.S. Dist. LEXIS 20215 at *7-12.

      **B.**    **Plaintiff Has Sufficiently Alleged the Individual Defendants Engaged In Tortious Conduct**

The Individual Defendants next contend the "fiduciary shield" doctrine should apply to prevent the attribution of any forum contacts of Thermogenisis or its subsidiaries to either of them, so long as each man was acting in the interest of the company at the time of the alleged forum contact. Resp. [Dkt. #16] at 8; *see generally* Mot. Dism. [Dkt. #6]. The fiduciary shield doctrine states that "an individual's ***transaction of business*** within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam

jurisdiction over the corporation." *Stuart*, 772 F.2d at 1197 (emphasis added). The doctrine "does not protect a corporate officer from specific personal jurisdiction as to ***intentional torts or fraudulent acts*** for which he may be held individually liable." *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 693-94 (S.D. Tex. 2011) (quoting *Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (emphasis added)). A corporate officer whose allegedly tortious activity occurs outside the state, but is directed into and causes tortious injury within Texas, is subject to specific personal jurisdiction in Texas. *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 973-74 & n.10 (5th Cir. 1984), *Wireless Toyz*, 255 F. App'x at 794-95; *Pension Advisory Group*, 771 F.Supp. 2d at 694-95.

   Plaintiff has sufficiently alleged that Wiener and Swanson each took individual tortious action that was libelous and/or had the intent and effect of interfering with Plaintiff's business. First, Plaintiff alleges Wiener was individually responsible for causing defamatory reviews of Plaintiff's products to be posted on WorkWhileWalking.com in an attempt to divert market share through false negative advertising, and in retaliation for Plaintiff's refusal to do business with him. Resp. [Dkt. #31] at 2-3. With regard to Swanson, Plaintiff alleges he was specifically "advised that WWW 'reviews' were used to advertise products sold by or through Thermogenisis and punish uncooperative competitors." *Id*. at 10 (citing Mot. Seal [Dkt. #32] at Ex. D, TG 128-132), and with that knowledge, he signed and sent a letter implying that the website's negative reviews of Plaintiff's products would continue unless Plaintiff agreed to reopen negotiations concerning a business relationship with Defendants. *Id.* Plaintiff also alleges Swanson collaborated with Wiener in deciding what edits to make to the re-posted, allegedly still-defamatory version of the review that was issued after the cease-and-desist letter. Compl. [Dkt. #1] at ¶¶ 31-32, 47. Though Swanson has denied any participation in the website

9

contents other than minimal editing for typos and grammar, the jurisdictional discovery obtained by Plaintiffs includes an email from Wiener to Swanson specifically discussing edits to be made in response to another competitor's complaint.  Mot. Seal [Dkt. #32] at Ex. D, TG 128-132.

      Defendants assert the reviews concerning Plaintiff's products that were edited by Wiener and Swanson on WorkWhileWalking.com were in no way tortious, but constituted only bona fide product reviews.  In support of this argument, Defendants provide documents purported to be organic consumer "comments" complaining about Plaintiff's products, which they allege support their decision to give Plaintiff's products negative reviews on their website.  Reply [Dkt. #35] at Ex. D-H.  The comment posts are attributed only to internet screen names, so there is no way of telling who actually wrote them.  *See id.; see also* Mot. File Under Seal [Dkt #33] Ex. D (discussing the practice of using consumer commenters-for-hire).  Even crediting Defendants' characterization of these anonymous comments as organic customer complaints about NTI's products, however, there is still a fact issue regarding whether the reviews written by Wiener and edited by Swanson were bona fide or were essentially a coercive bargaining strategy.

      Wiener's emails, copying Swanson, specifically attribute a "surge in online and Amazon sales" to a similar negative WorkWhileWalking.com review of a competitor.  Mot. File Under Seal [Dkt #33] Ex. D.  The same email chain includes an email from Wiener to Swanson, asking for Swanson's input on responding to a competitor's request for factual modifications to a negative review, stating "We probably need to go halfway with it . . .. But we're not going to run advertising for our most vile direct competitor."  *Id.*  The letter responding to Plaintiff's cease-and-desist notice, which was authored by Wiener and reviewed and signed by Swanson, reiterates ". . . I would be very interested in having WorkWhileWalking sell their product(s) in our stores. Dan Lee can call me directly on that if he's interested."  Mot. Disc. [Dkt. #13], Ex. 3.

Plaintiff's allegations that Wiener and Swanson engaged in defamation in order to obtain market share are sufficiently well plead and supported by the limited jurisdictional discovery to survive Defendants' motion to dismiss. *Montcrief Oil*, 414 S.W.3d at 153-54.

### C. Defendants Have Not Established Personal Jurisdiction Would Offend Fundamental Fairness

Once Plaintiff has met its burden to establish the Defendants have minimum contacts with the forum that are causally related to Plaintiff's claims, then the burden shifts to Defendants to show that exercising jurisdiction would be unfair or unreasonable. *Monkton*, 768 F.3d at 433. In this case, the Defendants are (or were during the relevant period) key officers and agents of Thermogenisis. Their allegedly tortious actions are the same actions that Thermogenisis has conceded support personal jurisdiction in Texas. It is difficult to see any unfairness or unreasonableness in requiring the individual Defendants (who would likely be key Thermogenisis witnesses in any event) to defend their participation in the torts they allegedly committed with and for Thermogenisis in the same forum where Thermogenisis is being sued. *Intelligender v. Soriano*, No. 2:10-cv-125-TJW, 2011 U.S. Dist. LEXIS 26301, *36-37 (E.D. Tex. Mar. 15, 2011).

Moreover, this Court has found that Defendants have minimum contacts sufficient to support personal jurisdiction in Texas. "It is rare to say the assertion [of personal jurisdiction] is unfair after minimum contacts are shown." *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999). "[O]nce minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). While Defendants have identified burdens incident to litigation in a Texas forum, these burdens (travel, adherence to state substantive law for common law claims, adherence to state evidentiary rules regarding privileges, decisions by Texas jurors)

are "at most, an inconvenience which would be equally felt by forcing the [P]laintiff to litigate in [Washington]." *Id.* at 216.  Texas has a significant interest in providing a forum for an action when the injured party is a Texas resident. *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001). Defendants have not identified any "overwhelming burden . . . that outweighs the legitimate interests of the Plaintiff and the forum state."  *Wien Air*, 195 F.3d at 216.

## IV. CONCLUSION

Plaintiffs have met their burden to plead tortious conduct, not insulated by the fiduciary shield doctrine, that is (1) attributable to the individual Defendants; (2) directed at the forum state, Texas; and (3) causally related to Plaintiff's claimed injuries. *Monkton*, 768 F.3d at 433; *Spademan*, 772 F.2d at 1197-98.  Therefore, the Magistrate Court RECOMMENDS the District Court DENY Defendants Larry Swanson and Ron Wiener's Motion to Dismiss filed June 2, 2015 [Dkt. #6].

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted

by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED October 28, 2015,   _____
MARK LANE
UNITED STATES MAGISTRATE JUDGE